**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Efrain HERNANDEZ–RODRIGUEZ,
Defendant–Appellant.**

**No. 91–50572.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 1, 1992.

Decided Sept. 15, 1992.

---

Nancy Kendall, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

David P. Curnow, Asst. U.S. Atty. argued, Michael G. Wheat, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before: POOLE, BRUNETTI, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Efrain Hernandez–Rodriguez (Hernandez) appeals his sentence for transporting unlawful aliens in violation of 8 U.S.C. § 1324(a)(1)(B). The district court departed upward from the Sentencing Guidelines based upon the fact that Hernandez led Border Patrol agents on a three-hour high-speed chase. Hernandez claims that the upward departure was impermissible be-cause the district court also enhanced his sentence under U.S.S.G. § 3C1.2 for reckless endangerment of another person during flight from law enforcement officers. Hernandez also claims that the district court erroneously calculated his base offense level. Although an upward departure was authorized under the circumstances of this case, the district court failed to justify the extent of the departure. Therefore we vacate and remand for resentencing.

## BACKGROUND

Hernandez was smuggled into this country. According to Hernandez, he was allowed to drive other unlawful aliens north from San Diego in lieu of a $300 payment. On March 14, 1991 he was spotted by Border Patrol agents while driving a 1973 Datsun 240Z north on I–15 in San Diego county. Hernandez had five passengers: one in the front seat and four others in the rear cargo compartment of the car, partially concealed by a blanket. Hernandez was pulled over for an immigration inspection. Once the agents left their patrol car, Hernandez sped away.

The agents pursued Hernandez for 165 miles. The chase lasted for more than three hours, with speeds up to eighty miles per hour on the freeway and up to forty-five to fifty miles per hour on surface streets. Hernandez did not observe posted traffic signs or stop signs and drove at excessive speeds through school and residential zones. Hernandez led the agents through the towns of Hemet, Mountain Center, Palm Desert, Indio, and Westmoreland, where he finally ran out of gas.

One of the passengers told Border Patrol agents that he met Hernandez in Tiajuana and Hernandez offered to smuggle him to Los Angeles for $300. Hernandez then brought him into the United States and placed him in the Datsun. This passenger said he feared for his life during the chase and asked Hernandez to pull over. Another passenger said that Hernandez picked him up in San Ysidro and offered him a ride to Los Angeles for a fee.

The Presentence Report (PSR) identified a base offense level of nine and a criminal

history category of I. It recommended a two-level increase under U.S.S.G. § 3C1.2 for reckless endangerment during flight as well as an upward departure under section 2L1.1 application note 8 due to dangerous or inhumane treatment of aliens. While the applicable guideline range was eight to fourteen months, the PSR recommended a sentence of thirty months. The district court found a base offense level of nine. The court then added two levels under U.S.S.G. § 3C1.2 for reckless endangerment during flight and subtracted two levels for acceptance of responsibility. The Guidelines range was four to ten months, but the court then departed upward and sentenced Hernandez to thirty months.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

We review the district court's decision to depart from the Guidelines under a tripartite test established in *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). First, the district court's determination that an "unusual circumstance" not adequately considered by the Guidelines permits departure is subject to de novo review. *Id.* Second, the district court's factual findings supporting the existence of an identified circumstance permitting departure are reviewed for clear error. *Id.* Finally, the extent of the departure is reviewed to determine whether it is reasonable in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines. *Id.* at 751.

## DISCUSSION

A. Upward Departure

1. *Authority to Depart Upward under U.S.S.G. § 2L1.1 note 8*

A district court may not depart from the Guidelines sentence unless the court has identified " 'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....' " *Lira–Barraza*, 941 F.2d at 746 (quoting 18 U.S.C. § 3553(b)). The Sentencing Commission's adoption of U.S.S.G. § 3C1.2, "Reckless Endangerment During Flight," shows that the Commission has considered to some extent the dangers of high-speed chases. Section 3C1.2 provides a two-level increase "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer...." U.S.S.G. § 3C1.2 (Nov. 1, 1990). Appellant argues that the district court erred in departing upward under U.S.S.G. § 2L1.1 based on the high-speed chase because that conduct was already fully considered under section 3C1.2.

Before the Commission adopted section 3C1.2, we permitted an upward departure for high-speed chases in cases involving the illegal transportation of aliens. *See Lira–Barraza*, 941 F.2d at 746; *United States v. Rodriguez–Castro*, 908 F.2d 438, 441 (9th Cir.1990); *United States v. Ramirez–De Rosas*, 873 F.2d 1177, 1179 (9th Cir.1989). We held that an upward departure was authorized under application note 8 to U.S.S.G. § 2L1.1, which states that an upward departure should be considered for "offenses involving large numbers of aliens or dangerous or inhumane treatment." U.S.S.G. § 2L1.1 comment. (n. 8). The question in this case is whether section 3C1.2 now forecloses an upward departure for high-speed chases when the fleeing car is laden with unlawful aliens.

The history of section 3C1.2 sheds no light on this issue. Before section 3C1.2 existed, some courts concluded that high-speed chases merited an enhancement under section 3C1.1, "Obstructing or Impeding the Administration of Justice." *United States v. Paige*, 923 F.2d 112, 114 (8th Cir.1991); *United States v. White*, 903 F.2d 457, 460–62 (7th Cir.1990). In the view of one court, section 3C1.2 has codified the result reached by those courts and "clarified, rather than changed, the existing law under the earlier § 3C1.1." *United States v. Bell*, 953 F.2d 6, 10 n. 4 (1st Cir.1992). We had held, however, that "whether a defendant recklessly endangered others while fleeing bears no logical relation to whether that defendant was obstructing

the law enforcement officers who were attempting to apprehend him" and hence we had refused to enhance a sentence under section 3C1.1 for a high-speed chase. *United States v. Christoffel*, 952 F.2d 1086, 1089 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992). In adopting section 3C1.2 the Commission provided no elucidation beyond a statement that "reckless endangerment during flight is sufficiently different from other forms of obstructive conduct to warrant a separate enhancement." U.S.S.G.App. C at 166 (Nov. 1, 1991) (amendment 347).

■ Hernandez argues, however, that section 3C1.2 expressly considers reckless endangerment of others during high-speed chases and therefore limits the district court's discretion to depart upward under section 2L1.1 for the same conduct. *Cf. United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir.1989). We are satisfied that the aliens are not excluded from the operation of section 3C1.2. It is true that section 3C1.2 refers to the risk of injury "to another person," and the commentary explains that this "includes any person, *except a participant in the offense who willingly participated in the flight.*" U.S.S.G. § 3C1.2 comment. (n. 4) (emphasis added). The alien passengers cannot be considered "participants in the offense" because they are not criminally responsible for smuggling under 8 U.S.C. § 1324. *See* U.S.S.G. § 3B1.1, comment. (n. 1) (participant is one who is criminally responsible for the commission of the offense). Even if the unlawful aliens hidden in the appellant's vehicle were participants in the smuggling offense, it is far from clear that they "willingly participated in the flight." They sought to enter the United States and avoid detection by hiding in Hernandez's vehicle, but there is no indication that they contemplated that he would drive his vehicle in a manner that seriously endangered their lives. Furthermore, there is no evidence that the aliens had control over his conduct and no indication that they had means of protecting themselves from it. Quite the contrary; when a passenger asked Hernandez to stop he paid no heed.

The question which remains is whether section 3C1.2 adequately takes into account the particular danger imposed by the alien transporter upon his captive passengers. We hold that it does not. Application note 8 to section 2L1.1 demonstrates the Commission's special concern for the dangerous or inhumane treatment of aliens, and we have enforced that protective policy. *See United States v. Gomez*, 901 F.2d 728, 729 (9th Cir.1990) (allowing an upward departure when the defendant crowded eight aliens into a small, closed compartment located over the vehicle's exhaust system). The Commission's and our concern for the treatment of the aliens is not reflected in section 3C1.2, under which the offense level could be increased for a high-speed chase even if the defendant were the sole occupant of the fleeing vehicle. *Cf. Paige*, 923 F.2d at 114 (increasing offense level under section 3C1.1 because of high-speed chase when the defendant was the sole occupant of the vehicle).

■ When, as here, the defendant embarks upon a high-speed dangerous flight in a vehicle overloaded with human beings who are being treated like mere cargo, section 3C1.2 does not bar an upward departure based upon the protective policy of application note 8 to section 2L1.1. *See United States v. Anderson*, 942 F.2d 606, 612 (9th Cir.1991) (guidelines and commentary should be construed consistently where possible). This treatment of people as mere objects is not tolerable. We, of course, cannot condone their own attempt to enter the country illegally, but we can empathize with their desire to come and can see them as the victims they often are. The Commission's recognition of the need to protect them from maltreatment was both perceptive and proper. It clearly justifies a departure in this case.

2. *Authority to Depart Upward under U.S.S.G. § 3C1.2*

■ The government argues that an upward departure was also authorized under section 3C1.2 itself because Hernandez's conduct was "intentional." While section 3C1.2 provides a two-level increase if the defendant recklessly endangered another

person while fleeing from police, the commentary to that section authorizes an upward departure when "a higher level of culpability [than recklessness] is involved...." U.S.S.G. § 3C1.2 comment. (n. 2). Hernandez's actions clearly constitute reckless behavior as defined by the Guidelines: Hernandez was aware of but disregarded the risk created by his conduct when "the risk was of such a nature and degree that to disregard that risk constituted a gross deviation" from a reasonable standard of care. U.S.S.G. § 2A1.4 comment. (n. 1) (Nov. 1, 1991).

There is no indication, however, that Hernandez had a higher level of culpability than recklessness. While recklessness can lead to a conviction for involuntary manslaughter, U.S.S.G. § 2A1.4, a higher level of culpability will support a conviction for second-degree murder. A jury can convict a defendant of second-degree murder if "the defendant acted with 'extreme indifference to the value of human life'...." *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir.1987) (quoting Model Penal Code § 210.2 (1985)). If a jury finds "that the defendant's mental state evinces a wanton or reckless disregard for human life but not of the extreme degree that will support a finding of malice aforethought, then it can only convict the defendant of manslaughter." *Id.* The difference between malice and recklessness "is one of degree rather than kind." *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir.1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985); Model Penal Code § 210.3 note 4 (1980).

■ Similarly, we hold that in order to show that Hernandez's conduct was more than reckless the government must demonstrate that Hernandez had a *mens rea* more akin to that for second-degree murder. After all, the action of a fleeing person must create a substantial risk of "death or serious bodily injury to another"

before the two-point adjustment of section 3C1.2 comes into play at all. The government does not claim that Hernandez's actions showed "an extreme indifference to the value of human life." *Lesina*, 833 F.2d at 159. Indeed, it hardly could. There is nothing to show that Hernandez did anything during the chase beyond the actions of a person fleeing from the police. He did speed, he did go through stop signs, and he did ignore other traffic laws. But the notion that a fleeing felon would punctiliously obey the traffic laws presents a picture of almost comic proportions. In our opinion, something more is needed before an upward departure under this guideline is permissible. Hence application note 2 to section 3C1.2 offered no basis for departure.

■ The government also argues that because section 3C1.2 is written in the singular, an upward departure is warranted under that section when the defendant's actions endanger more than one person. *See* U.S.S.G. § 5K2.0 ("[B]ecause the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured."). *Cf. United States v. Caterino*, 957 F.2d 681, 684 (9th Cir.1992) (the court expressly declined to consider whether "exploitation of numerous vulnerable victims could support an upward departure under 5K2.0"). It would be a rare automobile chase that did not endanger more than one person. To permit an upward departure because two or more people were endangered would make departure the rule rather than the exception. We decline to adopt a construction of section 3C1.2 that would mandate departure in almost every case.[1]

3. *Reasonableness of the Extent of Departure*

■ The district court correctly determined that Hernandez's dangerous treatment of the aliens was an "unusual circumstance" not adequately considered by the Guidelines. *See Lira–Barraza*, 941 F.2d at 746. The court's factual findings supporting the existence of this circumstance were

---

1. We note that the Sentencing Commission recently proposed an application note 5 to section 3C1.2 which would authorize an upward departure in cases where "the conduct posed a substantial risk of death or bodily injury to more than one person...." 57 Fed.Reg. 20,156 (1992). The rationale for this amendment is unclear. In any event, this amendment would not apply to Hernandez even if it were adopted.

not clearly erroneous. *Id.* The question remains, however, whether the degree of departure was "unreasonable." *Id.* at 747. "To facilitate appellate review the district court's statement should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." *Id.* at 751.

While the district court increased Hernandez's sentence to thirty months from a Guidelines range of four to ten months, an increase of eight levels, it neither explained the amount of its departure nor analogized to other portions of the Guidelines. *See Lira–Barraza*, 941 F.2d at 749–51. Without the benefit of the district court's reasoning we find it impossible to conclude that the eight-level departure was reasonable. Appellee argues that the departure can be justified by analogy to U.S.S.G. § 2A5.2, "Interference with Flight Crew Member or Flight Attendant," under which the base offense level is increased by twelve levels if the defendant "intentionally" rather than "recklessly endangered the safety of the aircraft and passengers." U.S.S.G. § 2A5.2(a). This suggested analogy is improper because Hernandez's conduct bore no resemblance to interference with a flight crew, nor is there any evidence that Hernandez intended to harm his passengers or anyone else. Basically, the argument is a variation of the section 3C1.2 argument which we have already rejected. At any rate, the district court did not purport to make that analogy. *See United States v. Streit*, 962 F.2d 894, 903 (9th Cir.1992) (amended opinion) (this court considers "the reasons actually articulated by the district court both for the departure and the extent of the departure."). The district court's failure to explain the extent of the departure was error and requires vacation of the sentence.

**B. Calculation of the Base Offense Level**

■ Hernandez claims that he did not smuggle the aliens for profit and thus his base offense level should have been six rather than nine. U.S.S.G. § 2L1.1(b)(1). According to Hernandez, he transported the aliens in lieu of paying for his own transportation. *See id.*, comment. (n. 1). Hernandez did not object to the calculation of the base offense level in the district court; indeed, he expressly agreed with it. Nor did he argue for a "non-profit" reduction. We have held that such a failure to object constitutes a waiver of the right to appeal. *United States v. Visman*, 919 F.2d 1390, 1394 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991). On the other hand, we have also held that alleged sentencing errors will be reviewed for plain error when the defendant fails to object before the district court. *United States v. Martinez*, 956 F.2d 891, 893 (9th Cir.1992). " 'A plain error is a highly prejudicial error affecting substantial rights.' " *Id.* (quoting *United States v. Morris*, 827 F.2d 1348, 1350 (9th Cir.1987), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988)). There was no plain error in this case. According to the PSR, two passengers indicated that Hernandez charged them a fee. That information casts doubt upon Hernandez's claim that he did not aim to profit from his illegal activity. The government also stated that Hernandez was previously arrested for precisely the same kind of conduct and made the same sort of claim at the time. In the face of that conflicting information, the district court did not plainly err by assigning Hernandez a base offense level of nine.

**CONCLUSION**

From this and many other cases which have come before us, it is apparent that the transportation of aliens under dangerous conditions is a serious problem within the Southern District of California. High-speed chases of vehicles in which aliens are crammed into small cars (like the 240Z involved here) or stuffed into trunks or other compartments are all too common. At times those vehicles are even abandoned by the transporter while they are still moving along freeways. The alien victims are then left to their own fates, which could be horrible. Imagine the plight of a person who is locked in the trunk or other cargo area of a car which is involved in a chase at high speed, or involved in an accident, or

which bursts into flames. Imagine the terror of being one of four people crammed into the back of a 240Z as it speeds on and off freeways heedless of traffic laws for hours on end.

The district judges, like the Commission, have properly seen this as a special problem which requires special measures. Therefore, we uphold the decision to depart in this case. However, all of that being said, the district court must still explain why the amount of the departure was chosen. Otherwise, the attempt at uniformity and fairness that was the aim of the guideline system will go entirely by the boards. One person, like Hernandez, may receive a trebling of his sentence. Another person who is seemingly equally culpable might receive a modest increase. Those kinds of variations appear unjust unless explained. We do not say that the differences cannot be explained. We only say they must be.

The sentence is VACATED and the case is REMANDED for resentencing.