15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel Angel MARTINEZ-GARCIA, Defendant-Appellant.
 No. 92-50072.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1993.
Decided Dec. 7, 1993.
 
 Before: BROWNING, BEEZER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Miguel Angel Martinez-Garcia challenges the 36 month sentence imposed on him for illegally transporting undocumented aliens. He claims the district court erred in departing upward from the guideline sentencing range and in refusing to grant a reduction for acceptance of responsibility. We affirm.
 
 
 3
 * Martinez-Garcia argues that he was denied due process because the district court failed to state the reasons for its upward departure from the guidelines. Because this issue was not raised in the district court, we review for plain error. United States v. Olano, 113 S.Ct. 1770, 1776 (1993).
 
 
 4
 18 U.S.C. Sec. 3553(c) requires the court to "state in open court the reasons for its imposition of the particular sentence, and, if the sentence ... is outside the range [of the Guidelines], ... the specific reason for the imposition of a sentence different from that described." 18 U.S.C. Sec. 3553(c) (1993). This requirement can be satisfied, however, if the district court adopts the presentence report and the report states the reasons for the departure. See United States v. Pearson, 911 F.2d 186, 189 (9th Cir.1990); United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). The court read large segments of the report into the record, including some of the segments explaining the departure, and made it quite clear that it was following the report's sentencing recommendations. "The record at the sentencing hearing reflects no confusion on anyone's part as to what the district court decided." Rigby, 896 F.2d at 394. We conclude, therefore, that the district court sufficiently stated the reasons for its departure from the Sentencing Guidelines.
 
 II
 
 5
 * Martinez-Garcia next challenges the propriety of the departure from the Guidelines sentencing range. This court analyzes such departures under the three-part test described in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991).[1] First, the reviewing court must determine whether the trial court had the legal authority to depart. Id. This is a question of law and is thus reviewed de novo. United States v. Ono, 997 F.2d 647, 649 (9th Cir.1993). Second, the appellate court reviews for clear error the factual findings in support of the aggravating circumstances identified by the district court as the basis for departure. Lira-Barraza, 941 F.2d at 746. Finally, the circuit court must determine if the departure is reasonable. Id. at 747.
 
 B
 
 6
 First, we decide whether the court had legal authority to depart. Id. at 746. "[T]he district court may not depart from the applicable Guideline range unless it identifies an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account when formulating the Guidelines." Id.
 
 
 7
 The circumstances behind the departure and the calculations involved are explained in the presentence report. The base offense level was nine. U.S.S.G. Sec. 2L1.1(a). Two levels were added, under the Guidelines, because "defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. Sec. 3C1.2. Thus, the total offense level under the Guidelines was 11.
 
 
 8
 The district court then added two levels under Sec. 2L1.1, Note 8 because of the large number of aliens transported. Note 8 states, "The Commission has not considered offenses involving large numbers of aliens or dangerous or inhumane treatment. An upward departure should be considered in those circumstances." U.S.S.G. Sec. 2L1.1, note 8. This brings the total offense level to 13.
 
 
 9
 Martinez-Garcia challenges the additional six level departure that brought the total offense level to 19. The district court added four levels for the dangerous and inhumane treatment most specifically to the four illegal aliens concealed in the trunk. Martinez-Garcia argues that the treatment of the four aliens in the trunk should be included in the two-level departure for the large number of aliens. This argument fails, however, because note 8 specifically says the Commission has not considered offenses involving "large numbers of aliens or dangerous or inhumane treatment." U.S.S.G. Sec. 2L1.1, note 8 (emphasis added). There is no reason that the court could not depart both because an offense involved large numbers of aliens and because it involved inhumane treatment. We conclude that the court had the authority to depart based on the treatment of the four aliens in the trunk.
 
 
 10
 Martinez-Garcia also challenges the final two-level departure made pursuant to Sec. 3C1.2, note 2. This note says that when a higher degree of culpability than recklessness is involved, a departure beyond the two-level recklessness increase may be warranted. U.S.S.G. Sec. 3C1.2, note 2. We conclude the district court did not err in finding that Martinez-Garcia's conduct went beyond recklessness and demonstrated extreme indifference to the value of human life. See U.S. v. Hernandez-Rodriguez, 975 F.2d 622, 627 (9th Cir.1992).
 
 
 11
 In Hernandez-Rodriguez, the appellant, who had five aliens in his car, led Border Patrol agents on a 165 mile chase, driving at speeds up to 80 miles per hour, ignoring traffic signs and speeding through school and residential zones until he finally ran out of gas. This court held that a departure under Sec. 3C1.2, note 2, was not appropriate in Hernandez's case because he did nothing beyond the actions of a person fleeing from the police. Id. at 627. The court added, "[T]he notion that a fleeing felon would punctiliously obey the traffic laws presents a picture of almost comic proportions. In our opinion, something more is needed before an upward departure under this guideline is permissible." Id.
 
 
 12
 Martinez-Garcia claims that he, like Hernandez, did nothing beyond the normally-reckless actions of a fleeing felon. However, we believe Hernandez-Rodriguez is distinguishable in a number of ways. First, unlike Hernandez, Martinez-Garcia engaged in two high speed chases. The district court said, "I am certain the Guidelines Commission has not taken into consideration two high-speed chases in one morning." Second, Martinez-Garcia nearly hit a Border Patrol agent, an oncoming limousine and a pedestrian, made a U-turn across four lanes of a freeway, and drove on the wrong side of the street several times. Finally, unlike Hernandez, who stopped when he ran out of gas, Martinez-Garcia crashed into a fence. We conclude, therefore, that Martinez-Garcia acted with extreme indifference to human life, thus earning a departure under Sec. 3C1.2, note 2.
 
 C
 
 13
 Under part 2 of the Lira-Barraza test, we determine whether any of the factual findings the district court relied upon in departing were clearly erroneous. Lira-Barraza, 941 F.2d at 746.
 
 
 14
 Martinez-Garcia does not dispute the existence of most of the circumstances the district court relied on in departing. He does argue, however, that there was no evidence supporting the conclusion that the aliens in the trunk were treated in any particularly inhumane way. He suggests that there is nothing inhumane about four illegal aliens spending six and a half hours lying in the trunk of a Chevy Malibu because most people sleep longer than that in their beds every night. He further speculates that those in the trunk may have been less frightened than the other passengers during the chase because they had less of an idea what was happening. These arguments are absurd. The district court's factual findings were free of clear error.
 
 D
 
 15
 After determining that the district court had the authority to depart and that the departure was based on factual findings that were not clearly erroneous, we decide whether the extent of the departure was "unreasonable." Lira-Barraza, 941 F.2d at 747. "A reasonableness standard assumes a range of possible sentences," and this court "give[s] weight to the district court's choice within a permissible range." Id. at 751. The 2-level departures are within the permissible range, and the 4-level increase is also reasonable, given the extended period of time the four aliens were locked in the trunk. See United States v. Gomez, 901 F.2d 728, 729-30 (9th Cir.1990) (departure from a Guideline range of one to seven months to a sentence of 24 months was reasonable when the defendant had eight aliens in a small compartment in a van). We conclude that the departure from the Guidelines was proper under the Lira-Barraza test.
 
 III
 
 16
 Martinez-Garcia argues the district court erred in denying a downward adjustment for acceptance of responsibility. A defendant is entitled to a reduction of two levels if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. Sec. 3E1.1(a). Whether a defendant has accepted responsibility for a crime is a question of fact which this court reviews for clear error. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). The district court's determination will not be disturbed "unless it is without foundation." Id. (emphasis in original). "Entry of a guilty plea before trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility.... However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. Sec. 3E1.1, note 3. The defendant has the burden of showing acceptance of responsibility. Rosales, 917 F.2d at 1222.
 
 
 17
 Martinez-Garcia claims that he accepted responsibility by pleading guilty and providing the government with some information about his past criminal history. He also cites the statement he made during sentencing where he expressed his remorse. The presentence report concluded, however, that Martinez-Garcia mitigated his involvement and only partially accepted responsibility for his conduct. His statements to the probation officer are sufficient to support the presentence report's conclusion that Martinez-Garcia did not fully recognize and accept responsibility for his criminal conduct. The district court's decision not to grant the reduction was not clear error.
 
 
 18
 The sentence is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Since the specific challenges Martinez-Garcia makes on appeal were not raised in the district court, it would be proper for this court to analyze them under the plain error standard. Olano, 113 S.Ct. at 1776. However, it is not necessary for us to attempt to combine a plain error review with the trifurcated review set out in Lira-Barraza because Martinez-Garcia's challenges fail even under the more lenient Lira-Barraza standard