15 F.3d 1091
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alfredo EQUIHUA, aka Jorge Perez-Magana, aka Alfredo
Juarez-Equiha, aka Alfredo Soto-Torres, aka
Alfredo Equiha-Equiha, Defendant-Appellant.
 No. 92-50672.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1993.
Decided Jan. 4, 1994.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alfredo Juarez-Equihua appeals his convictions and sentence for two counts of knowingly transporting undocumented aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B). Juarez-Equihua argues that his convictions should be reversed because of prosecutorial misconduct and because the government deported witnesses material to his defense. He also argues that the district court improperly departed upward when determining his sentence. We affirm Juarez-Equihua's convictions but reverse the upward departure and remand for resentencing.
 
 I.
 
 3
 Juarez-Equihua argues that remarks made by the prosecution during closing arguments constituted prosecutorial misconduct requiring the reversal of his conviction. We disagree.
 
 
 4
 Prosecutorial comments to which the defendant objects are reviewed for harmless error. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). The inquiry is whether alleged improper behavior, considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly. Id. This standard allows some room for the prosecution to argue that its remarks were "invited" by the defense counsel's attacks. Id. In such a case, the court must examine the prosecutor's remarks to determine if they "simply 'right[ed] the scale' of justice." Id. (quoting United States v. Young, 470 U.S. 1, 26 (1985)).
 
 
 5
 In her closing argument, the prosecutor insinuated that the deported aliens could have identified the appellant as the driver despite the absence of any evidence in the record to this effect. To some degree, the prosecutor's remarks were invited by the defense counsel's closing argument which questioned the absence of the deported aliens as government witnesses. But, to the extent that the prosecutor's remarks went beyond merely explaining why the government sometimes deports potential witnesses, her remarks were improper.
 
 
 6
 Nevertheless, the prosecutor's improper remarks do not require reversal. The remarks only involved a single, isolated incident, rather than an extensive tactic by the prosecution. See Jeffries v. Blodgett, 988 F.2d 923, 933-34 (9th Cir.1993) (finding relevant the extent of the prosecution's improper remarks). In addition, the defense counsel quickly objected to the remarks and the district court sustained the objection, thus minimizing any possible harm. See Young, 470 U.S. at 13 (holding that timely objection and prompt action by the district court are the preferred method of dealing with improper statements on the part of the prosecution as well as the defense). Finally, there was substantial evidence that the appellant was the driver. See id. at 19 (holding that the substantial evidence of the defendant's fraud eliminated any lingering doubt that the prosecution's remarks unfairly prejudiced the jury's deliberations or exploited the government's prestige). At trial, at least two border patrol agents clearly identified the appellant as the driver. There was also evidence that one of the passengers who had not been deported identified the appellant as the driver from a photographic line-up.
 
 
 7
 In light of these facts, we hold that the prosecution's remarks, in the context of the entire trial, did not affect the jury's ability to judge the evidence fairly, and therefore any error was harmless. Endicott, 803 F.2d at 513.
 
 II.
 
 8
 Juarez-Equihua argues that the district court erred by denying his motion to dismiss the indictment based on the government's deportation of one of the aliens who allegedly had information favorable to the defense. We disagree.
 
 
 9
 To require reversal on such a claim, the appellant must show both bad faith on the part of the government and prejudice resulting from the government's conduct. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325 (9th Cir.1992). As in other cases concerning the loss of material evidence, sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the trier of fact. United States v. Dring, 930 F.2d 687, 694-95 (9th Cir.1991), cert. denied, 113 S.Ct. 110 (1992).
 
 
 10
 Four of the eleven passengers were in the trunk, and therefore could not have identified the driver. Three of the passengers in the car's interior were children who were not asked to identify the appellant. Of the four remaining interior passengers, three clearly identified the appellant as the driver. The remaining passenger stated "that she never saw [the driver's] entire face, but state[d] that he had a small mustache and that he was wearing a brown sweater."
 
 
 11
 Juarez-Equihua argues that the remaining passenger's description was favorable to his defense because he in fact had a full beard. He argues that he was prejudiced by this passenger's deportation because it prevented him from calling her as a witness for the defense. He does not explain how he was prejudiced by the deportation of any other passenger.
 
 
 12
 However, at least two border patrol agents clearly identified the appellant as the driver. There was also evidence that one of the passengers who had not been deported identified the appellant as the driver from a photographic line-up. Moreover, Juarez-Equihua called this passenger as a witness at trial and was unable to elicit any testimony in support of his theory that the true driver climbed over three passengers, including Juarez-Equihua, to escape out the passenger side door. Given the substantial evidence that Juarez-Equihua was the driver, the deported passenger's testimony would not have affected the trier of fact. See Dring, 930 F.2d at 694-95 (holding that a deported witnesses' testimony concerning misidentification was not material in light of the convincing evidence of the appellant's guilt).
 
 
 13
 In the absence of prejudice, the district court correctly denied the motion to dismiss the indictment. We affirm the denial of the dismissal motion.
 
 III.
 
 14
 Juarez-Equihua argues that the district court improperly departed upward for endangerment to the public and the border patrol agents resulting from the high speed chase that ensued when his car was approached by the border patrol. We agree.
 
 
 15
 The district court's decision to depart from the Sentencing Guidelines is reviewed under a three-step test. United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc). First, the district court's determination that an unusual circumstance not adequately considered by the Guidelines permits departure is subject to de novo review. Id. Second, the district court's factual findings supporting the existence of an identified circumstance permitting departure are reviewed for clear error. Id. 746-47. Third and finally, the extent of the departure is reviewed to determine whether it was reasonable in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines. Id.
 
 
 16
 The district corut determined the appropriate offense level as follows:
 
 
 17
 First of all, the base level is 9; the prior conviction for the same offense is plus 2; reckless endangerment is plus 2; reckless endangerment of a large number of aliens not taken into consideration by the Guidelines, eleven, is a plus 2; endangerment to the public and to the agents is a plus 2 and obstruction of justice is a plus 2. That gives a total amount of 19.
 
 
 18
 A defendant's offense level may only be increased once for reckless endangerment resulting from a high speed chase under Sec. 3C1.2. See United States v. Hernandez-Rodriguez, 975 F.2d 622, 627 (9th Cir.1992) (declining to adopt a construction of Sec. 3C1.2 that would permit an upward departure because two or more persons were endangered). Because Juarez-Equihua's offense level had already been increased for reckless endangerment, we assume that the district court meant to depart upward under application note 2 of Sec. 3C1.2 for endangerment to the public and the border patrol agents.
 
 
 19
 Application note 2 of Sec. 3C1.2 allows for an upward departure for endangerment during flight, but only for offenses in which the government demonstrates a higher degree of culpability than mere recklessness. The district court must find that the defendant acted with extreme indifference to human life. Hernandez-Rodriguez, at 627. Something beyond the normal actions of a person fleeing from the police is required; evidence of speeding, going through stop signs and ignoring traffic laws is not enough. Id.
 
 
 20
 The district court did not make any factual findings regarding Juarez-Equihua's state of mind and the presentence report relied upon by the district court was filed before this court's decision in Hernandez-Rodriguez and thus did not undertake the relevant analysis. Additionally, although the government discussed Hernandez-Rodriguez in its sentencing memorandum, the district court only adopted the government's memorandum to the extent that it justified the upward departure for obstruction of justice. Accordingly, the sentence is reversed, and we remand for resentencing.
 
 
 21
 AFFIRMED AS TO THE CONVICTIONS, REVERSED AND REMANDED FOR RESENTENCING.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3