**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 18 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-10170 |
| Plaintiff - Appellee, | D.C. No. 2:06-cr-00717-DGC-2 |
| v. | |
| ADNAN ALISIC, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted November 3, 2009
San Francisco, California

Before: HUG, RYMER and McKEOWN, Circuit Judges.

Adnan Alisic was convicted after a jury trial for Conspiracy and Aiding and

Abetting in violation of 18 U.S.C. §§ 2, 371, and 1951; Interference with

Commerce by Threats, Violence, and Robbery and Aiding and Abetting in

violation of 18 U.S.C. §§ 2 and 1951; and Use of a Firearm in a Crime of Violence

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

and Aiding and Abetting in violation of 18 U.S.C. §§ 2 and 924(c). Alisic appeals his conviction for Use of a Firearm in a Crime of Violence under 18 U.S.C. § 924(c) and his sentence of 221 months imprisonment. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Alisic argues the district court erred in denying his motion under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on the government's 18 U.S.C. § 924(c) charge. Viewing the evidence in the light most favorable to the government, the district court did not err in denying Alisic's Rule 29 motion. Under the first clause of § 924(c), the government presented persuasive evidence that Alisic carried the pistol in the van he used to commit the robbery. *See Muscarello v. United States*, 524 U.S. 125, 126-27 (1998) (holding that "carries a firearm" includes one who knowingly possesses and conveys a firearm in a vehicle). With respect to the "in relation to any crime of violence" element, the government presented evidence that Alisic told Danijel that the gun would "be used if somebody's trying to shoot back at us." This evidence meets this court's admonition that carrying a firearm relates to the underlying offense when the firearm facilitated or had a role in the crime. *See United States v. Arreola*, 467 F.3d 1153, 1160 (9th Cir. 2006).

Alisic also appeals his sentence based on the district court's application of the Sentencing Guidelines. As an initial matter, Alisic incorrectly argues that the district court should have applied the clear and convincing standard to a 4- and 2-level increase in his offense level. In *United States v. Pike*, this court explained that a sentence is doubled only if both the low and high points of a sentencing range would double a defendant's sentence. *See* 473 F.3d 1053, 1058 (9th Cir. 2007). Here, Alisic had a base offense level of 20 and criminal history level of II, which results in a sentencing range of 37-46. Even adding the 4- and 2-level enhancements together, the resulting sentencing range is 70-87–less than double the base-offense-level sentencing range.

Alisic contends that the district court also erred by finding that pepper spray constitutes a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(D), citing *United States v. Neill*, 166 F.3d 943 (9th Cir. 1999). The court need not reach this issue because an enhancement for use of a dangerous weapon was warranted due to Fleka's use of the fake AK-47 during the robbery. *See* U.S.S.G. § 1B1.1 cmt. n.1(D) (stating that a dangerous weapon includes an instrument that closely resembles an instrument capable of inflicting death or serious bodily injury).

The court also disagrees with Alisic's contention that the district court incorrectly found that he is subject to a 2-level enhancement pursuant to U.S.S.G.

3

§ 2B3.1(b)(3)(A) for inflicting a bodily injury upon Joshua Ouellette. Ouellette testified that he traveled only twenty feet in the armored truck before he had to get out because he could not breathe. Once inside the casino, EMTs took him into a bathroom where they tried to flush his eyes out. Ouellette rinsed himself in a shower for 45 minutes to an hour in an effort to get the burning sensation off of his body. The burning sensation lasted into the afternoon.

Although Alisic minimizes Ouellette's injury by noting that Ouellette ran toward the van in an effort to shoot the robbers, § 2B3.1(b)(3)(A) does not require a victim to become completely incapacitated. Furthermore, the EMTs' efforts to help Ouellette show that his injuries were those "for which medical attention ordinarily would be sought." *See* U.S.S.G. § 1B1.1 cmt. n.1(B).

Last, Alisic challenges the district court's application of U.S.S.G. § 3C1.2 on the basis that his conduct in fleeing from law enforcement did not exceed recklessness. Because Alisic did not object to the sentencing enhancement, this court reviews application of the enhancement for plain error. *See United States v. Guzman-Mata*, 579 F.3d 1065, 1068 (9th Cir. 2009). In support of his argument, Alisic contends that *United States v. Hernandez-Rodriguez*, 975 F.2d 622 (9th Cir. 1992) requires a higher level of culpability than recklessness before a court may apply § 3C1.2. Alisic's argument is unpersuasive. *Hernandez-Rodriguez* did not

4

address a straight-forward application of § 3C1.2 but rather concerned an upward departure beyond the two-level enhancement. *See id.* at 626-627.

In this case, Alisic's conduct in the course of fleeing from police constituted recklessness, if not extreme recklessness. At trial, the government presented evidence that Alisic drove the getaway van through a crowded intersection at 50 to 60 miles per hour, happening to shoot between a gap of cars. The district court correctly found that this conduct created a substantial risk of death or serious bodily injury to another person.

**AFFIRMED.**