**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

ADAN PINEDA-DOVAL,
              *Defendant-Appellant.*

No. 11-10134

D.C. No.
2:06-cr-00778-
SMM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
February 14, 2012—San Francisco, California

Filed August 27, 2012

Before: Betty B. Fletcher, William C. Canby, Jr., and
Susan P. Graber, Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge Graber

## COUNSEL

Daniel L. Kaplan, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Ann Birmingham Scheel, Acting United States Attorney, Randall M. Howe, Deputy Appellate Chief, Bridget S. Bade (argued), Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Defendant-Appellant Adan Pineda-Doval ("Pineda-Doval") appeals the district court's imposition of ten concurrent life sentences for his convictions for ten counts of transportation of illegal aliens resulting in their deaths. *See* 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(iv). In the prior appeal, we affirmed Pineda-Doval's convictions but remanded for resentencing. On remand, the district court reimposed the life sentences. We vacate and remand for resentencing.

## BACKGROUND

Because we discussed the facts of this case in the prior appeal, *United States v. Pineda-Doval*, 614 F.3d 1019, 1023-24 (9th Cir. 2010), we provide only a short summary here. Pineda-Doval, a Mexican national and migrant worker who was twenty-one years old at the time, drove a large Chevy Suburban carrying twenty undocumented immigrants into Arizona. They encountered Border Patrol Agent Corey Lindsay about forty-five miles from the border. Agent Lindsay followed the Suburban for some time. Pineda-Doval then attempted to swerve around a spike strip that was deployed by other agents, with whom Agent Lindsay had communicated. At some point during the pursuit and before reaching the spike strip, Pineda-Doval exclaimed "encomendarse a Dios!" —translated at trial to "commend yourself to God, because we are being pursued." The Suburban evaded the spike strip but the sudden shift in weight caused it to roll end-over-end. Many passengers were thrown from the Suburban, and ten passengers died. After a seven-day trial, a jury found Pineda-Doval guilty on all charged counts. For each of the ten counts of transportation of illegal aliens resulting in death, the district court applied the cross-reference to the second-degree murder Guidelines[1] and sentenced Pineda-Doval to ten concurrent life sentences.

---

[1]*See* U.S.S.G. § 2L1.1(c) (2005). The cross-reference provides:

If any person was killed under circumstances that would consti-

In the first appeal, we affirmed Pineda-Doval's convictions but vacated his sentence. We concluded that the district court erred by applying the cross-reference to the second-degree murder Guidelines without making a specific finding that Pineda-Doval acted with "malice aforethought." *Pineda-Doval*, 614 F.3d at 1039-40. We also concluded that the district court did not apply the "clear and convincing" standard of proof to the factual findings that were necessary to support application of the cross-reference. *Id.* at 1041-42.

On remand, the parties submitted new sentencing briefs, and the district court considered new evidence submitted by Pineda-Doval that clarified the common, idiomatic use of the phrase "encomendarse a Dios."[2] The district court stated during the sentencing hearing that the phrase did not factor into its sentencing decision. Even so, the district court ruled that clear and convincing evidence showed that Pineda-Doval acted with malice aforethought. Interpreting our prior remand as limited, the district court resentenced Pineda-Doval to ten concurrent life sentences without analyzing the 18 U.S.C. § 3553(a) factors or permitting Pineda-Doval to allocute.

## DISCUSSION

In this appeal, Pineda-Doval primarily challenges the district court's malice aforethought finding. He also claims that the district court committed several other procedural errors,

---

tute murder under 18 U.S.C. § 1111 had such killing taken place within the special maritime and territorial jurisdiction of the United States, apply the appropriate murder guideline from Chapter Two, Part A, Subpart 1.

[2]Pineda-Doval submitted a declaration by Yvette Citizen, a certified court interpreter who has a masters degree in bilingual and multicultural education. Ms. Citizen stated that the expression "encomendarse a Dios" is routinely used when a positive outcome is desired by the speaker. She concluded that the expression is "not reserved for religious situations or situations related to imminent danger."

that his life sentence is substantively unreasonable, and requests that we direct our remand to a different judge. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Pineda-Doval contends that the district court's finding that there was clear and convincing evidence that he acted with malice aforethought is clearly erroneous. "We review the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Chung*, 659 F.3d 815, 834 (9th Cir. 2011) (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 1951 (2012). A finding of fact is clearly erroneous "if it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011) (internal quotation marks omitted).

**[1]** The Guidelines for transportation of illegal aliens resulting in death instruct the district court to apply the appropriate murder Guidelines only if the facts support a finding that the defendant committed an unlawful killing with malice aforethought. *See* U.S.S.G. § 2L1.1(c) (2005) (citing 18 U.S.C. § 1111); *Pineda-Doval*, 614 F.3d at 1036-37. The district court is required to apply the clear and convincing standard of proof to a finding of malice aforethought because application of the murder Guidelines will have a disproportionate impact on the sentence imposed. *Pineda-Doval*, 614 F.3d at 1041-42.

**[2]** The relevant mental state for malice aforethought in this case is "depraved heart" or "reckless indifference." *Id.* at 1038. To act with a depraved heart or with reckless indifference, "a defendant's conduct must create a '*very high* degree of risk' of injury to other persons, he must be aware of that risk, and he cannot have a justifiable reason for taking that

risk." *Id.* (footnote omitted) (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.4 (2d ed. 2003)). Depraved heart or reckless indifference "cases involving car accidents have in common some form of exceptionally reckless driving, of so dangerous a nature that the possibility of a fatal collision would suggest itself to any reasonable observer." *Id.* at 1039 (internal quotation marks omitted). Driving that is merely reckless, but not wild, generally does not constitute malice aforethought. *Id.*

The district court ruled that clear and convincing evidence showed that Pineda-Doval acted with malice aforethought. The district court found that "everybody knows" that overloaded vehicles are inherently dangerous, and that Pineda-Doval knew that taking evasive action was going to result in "extreme consequences to anyone involved should there be an accident." The district court stated that the fact that the passengers died in a car accident did not detract from the high degree of risk of injury inherent in alien smuggling activities. Also, the district court referred to Pineda-Doval's conduct in two prior incidents of alien smuggling where he tried to avoid apprehension as evidence of wanton disregard for the passengers in his personal effort to escape.

We disagree with the district court's finding. The record does not contain clear and convincing evidence that Pineda-Doval acted with malice aforethought.

**[3]** First, there is no evidence in the record that Pineda-Doval was aware of a very high likelihood that the overloaded Suburban would roll over. To the contrary, in a prior incident Pineda-Doval drove a truck around a spike strip without rolling over or causing an accident. From his own experience he had reason to believe that avoiding a spike strip would not lead to a catastrophic accident. The district court failed to take account of that prior incident. In light of the prior incident, there is no clear, direct, or weighty evidence in the record that

Pineda-Doval was aware that this time his attempt to avoid the spike strip created an extreme risk.

[4] Second, none of the Border Patrol Agents were aware of a very high risk of a fatal accident, either. The agents testified that they had participated in deploying spike strips many times. The overwhelming majority of the vehicles that the agents had attempted to stop with spike strips were high-profile vans or SUVs carrying many passengers, like the over-loaded Suburban driven by Pineda-Doval. The agents had observed vehicles stopped by spike strips, as well as vehicles that drove around them. But none of the agents had ever witnessed a vehicle roll as a consequence of either driving over or attempting to drive around a spike strip. In addition, the agents testified that they had chosen an area where the road was straight and the shoulders were flat in order to reduce the possibility of an accident. Also, the agents testified that the speed of the Suburban, which expert testimony estimated to be about 55 miles per hour, was much slower than most vehicles during a spike strip deployment.

[5] Further, Agent Lindsay observed Pineda-Doval's driving and the extent to which the Suburban was overloaded, and Agent Lindsay knew of the plan to deploy a spike strip. But Agent Lindsay testified that he considered the situation "perfectly routine." He felt no need under the circumstances to warn the other agents about the number of passengers in the Suburban or about Pineda-Doval's driving. There is nothing in the record to suggest that Agent Lindsay considered Pineda-Doval's driving "of so dangerous a nature that the possibility of a fatal collision would suggest itself." *Pineda-Doval*, 614 F.3d at 1039. The district court's finding of malice aforethought failed to take account of the testimony of reasonable observers who were well-suited to determine whether a fatal collision was likely.

The district court's finding of malice aforethought is inconsistent with the reasoning and result in *United States v.*

*Hernandez-Rodriguez*, 975 F.2d 622 (9th Cir. 1992). In *Hernandez-Rodriguez*, in his attempt to smuggle four aliens into the country, the defendant locked them into the cargo area of his small car. *Id.* at 624, 628-29. After encountering Border Patrol Agents, the defendant led them on a three-hour high-speed chase, often going through stop signs and ignoring traffic laws. *Id.* at 624. At sentencing, the district court departed upward on the basis of an enhancement that required the defendant to have a higher level of culpability than reck-lessness, akin to malice aforethought. *Id.* at 627. We dis-agreed, holding that "something more" than reckless driving and frightened passengers is required to show that a defen-dant's conduct goes beyond recklessness and establishes mal-ice aforethought. *Id.*; *see Pineda-Doval*, 614 F.3d at 1039.

**[6]** Pineda-Doval's swerving around the spike strip seems no more likely to result in a fatal accident than the repeated running of stop signs and speeding were in *Hernandez-Rodriguez*. Under the circumstances here, swerving around a spike strip was not the "something more" needed to establish malice aforethought. *Cf.* H.C. Lind, Annotation, *Homicide by Automobile as Murder*, 21 A.L.R.3d 116, 126, § 4[a] (1968 & Supp. 2012) (describing cases of wild driving that establish malice, such as speeding and driving through traffic signals and into oncoming traffic, and driving onto sidewalks or through cross-walks that are full of pedestrians).

**[7]** The district court clearly erred by finding that there was clear and convincing evidence that Pineda-Doval acted with malice aforethought. The finding is not supported by any clear, direct, or weighty facts in the record, and runs counter to strong evidence to the contrary. After considering the gov-ernment's arguments and the district court's findings, we con-clude that the record does not contain clear and convincing evidence that Pineda-Doval acted with malice aforethought. We must again vacate and remand for re-sentencing.[3]

---

[3]Because we vacate and remand on this issue, we need not address Pineda-Doval's claimed procedural errors. We note, however, that it

**[8]** On remand, the district court may not apply the cross-reference to the murder Guidelines. Although we limit the district court's discretion to apply the cross-reference, the district court should conduct a full resentencing. The defendant should be permitted to allocute, and the district court retains the discretion to apply the sentencing factors and to depart from the recalculated Guidelines range.

**[9]** We also note that Pineda-Doval requests that we assign this case to a new judge. Because we limit the district court's discretion to apply the cross-reference, we deny Pineda-Doval's request. The district judge exhibited no personal bias against Pineda-Doval. And with no further inquiry required into the cross-reference, the circumstances here are not unusual enough to warrant reassignment. *Ellis v. U.S. Dist. Court (In re Ellis)*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc).

## CONCLUSION

Because the district court clearly erred when finding that Pineda-Doval acted with malice aforethought, we VACATE the ten concurrent life sentences and REMAND for a new sentencing proceeding, in which the district court will not apply the U.S.S.G. § 2L1.1(c) (2005) cross-reference.

---

appears the judge was mistaken when he stated that Pineda-Doval would be eligible for parole despite being sentenced to ten concurrent life sentences. Prisoners serving life sentences are not eligible for "good conduct" parole, 18 U.S.C. § 3624(b)(1), and "compassionate release" parole is available only in extraordinary circumstances that are unforeseeable, 28 C.F.R. § 571.60.

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

"Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

> [A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.*

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (internal quotation marks and citations omitted) (emphasis added); *see also United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) ("[T]he Supreme Court's precedent convinces us that any 'definite and firm conviction' of the reviewing court must still include some measure of deference to the trial court's factual determinations.").

That general rule applies with particular force to the weighing of witnesses' credibility. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*,

470 U.S. at 575; *see also Allen v. Iranon*, 283 F.3d 1070, 1078 n.8 (9th Cir. 2002).

On remand, the district court judge described Pineda-Doval's demeanor as follows:

> [W]atching [Pineda-Doval] in the course of these proceedings, both past and in the present, he demonstrates everything but remorse in this case[ ]. It's just ho-hum. So somebody—I crashed and people died. So what? He has a very smug look on his face most of the time. And it belies his statements.

In my view, the district court's finding with respect to malice aforethought, which rested in part on demeanor, is entitled to deference.

The last time we heard this case, we remanded "for the district court to expressly find whether there is clear and convincing evidence that Pineda-Doval acted with malice aforethought when he undertook the charged conduct and to resentence the Defendant in light of its finding." *United States v. Pineda-Doval*, 614 F.3d 1019, 1042 (9th Cir. 2010). That is, we recognized the possibility that the facts of this case *might* rise to the level of malice aforethought, presumably contingent on Pineda-Doval's state of mind at the time he attempted to evade the spike strip.

Our remand instructions required the district court to assess those factors as trial courts generally do—through the taking of testimony and the weighing of credibility. The district court did exactly what we directed. In the particular context of this case, the majority's conclusion that the district court clearly erred amounts to a belated determination that Pineda-Doval's actions could not, as a matter of law, have constituted malice aforethought. Were that true, we would not have instructed the district court to make findings when we remanded in

Pineda-Doval's first appeal; we would instead have done what the majority does now.

In my view, Pineda-Doval's actions were so very reckless that a reasonable factfinder could find that they constituted malice aforethought. Reviewing for clear error, I would affirm.