**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 31 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLUMBIA FALLS ALUMINUM
COMPANY, LLC,

      Plaintiff-counter-
defendant-Appellant,

  v.

ATLANTIC RICHFIELD COMPANY,

      Defendant-counter-claimant-
Appellee.

No.   21-36042

D.C. No. 9:18-cv-00131-DWM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted December 5, 2022
San Francisco, California

Before:  WATFORD and SANCHEZ, Circuit Judges, and BENITEZ,[**] District
Judge.

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]     The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

Appellant Columbia Falls Aluminum Co., LLC ("CFAC") appeals the district court's equitable allocation of environmental cleanup costs between CFAC and Appellee Atlantic Richfield Co. ("ARCO") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). We review the equitable factors considered for abuse of discretion, and the equitable allocation of those factors for clear error. *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146–47 (9th Cir. 2018). "A finding of fact is clearly erroneous only where it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015) (quoting *United States v. Pineda–Doval*, 692 F.3d 942, 944 (9th Cir. 2012)). If there are two reasonable interpretations of the evidence, "the factfinder's choice between them cannot be clearly erroneous." *Christensen*, 828 F.3d at 779 (quoting *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc)). We affirm.

From 1955 to 1985, ARCO owned and operated an aluminum smelting site in Columbia Falls, Montana (the "Site"). In 1985, ARCO sold the Site to CFAC for $1.00, and CFAC operated the Site until 2009. Both ARCO and CFAC generated substantial profits in their respective operations and over the years, hazardous waste was disposed of throughout the Site, resulting in environmental contamination.

The transfer of the Site from ARCO to CFAC was governed by a written

agreement (the "Agreement") containing cross-indemnity provisions.

1. The district court's equitable allocation of CERCLA costs and reliance on the Agreement is consistent with its other findings. The district court relied on the Agreement when allocating 65 percent of CERCLA costs to CFAC versus 35 percent to ARCO. The court found that the Agreement was not drafted with the specificity required under Montana law to effectuate a waiver of the right to sue under statutes such as CERCLA. The court also found that the extrinsic evidence of the parties' intent was not sufficiently clear to overcome the lack of specificity in the Agreement's text. Therefore, unlike in *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 361 (3d Cir. 2018), the district court's refusal to enforce the Agreement rested solely on the fact that the high bar set by state law was not met.

Given the court's finding that the parties did intend the Agreement to cover non-statutory liability for the very environmental conditions at issue in this case, the court was within its discretion to consider the Agreement for purposes of equitable allocation under CERCLA. As the court noted, "[e]ven if the indemnity provisions are not enforceable as a matter of contract law to bar CFAC's claims, the evidence shows that the parties intended for CFAC alone to have an indemnification obligation to ARCO after August 31, 1990." Accordingly, the district court did not err in refusing to enforce the Agreement as a matter of law but considering it when equitably allocating costs. *See Cadillac Fairview/California, Inc. v. Dow Chemical*

*Co.*, 299 F.3d 1019, 1025 (9th Cir. 2002) (equitably allocating 100 percent of CERCLA cleanup costs to the government based on an indemnity clause that was not enforceable as a matter of law); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir. 1994) (holding the district court erred in allocating cleanup costs by not considering contractual arrangements, which reflected an intent to indemnify).[1]

2.      The district court did not err in applying the Gore Factors focused on the amount and nature of hazardous waste.[2]  Despite CFAC's contention that the district court was required to allocate costs based on each party's respective contamination of the Site, the text of CERCLA clearly and unambiguously states

---

[1]      CFAC also challenges the district court's 65-35 allocation as arbitrary and speculative.  However, the court found the Gore Factors and respective economic benefits to be neutral, relying on the Agreement to tip the scales in favor of ARCO. Because courts "need not allocate response costs to a mathematical certainty . . . ," there is no error here.  *See ASARCO LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 869 (9th Cir. 2020), *cert. dismissed sub nom. Atl. Richfield Co. v. Asarco LLC*, 141 S. Ct. 2843 (2021); *Nikko Materials USA, Inc. v. NavCom Def. Elecs., Inc.*, 291 F. App'x 67, 70 (9th Cir. 2008) ("The district court . . . acted within its discretion in reducing the level of contribution from sixty-six percent to sixty percent based on the contractual relationship between the parties and . . . [the] aggressive conduct during negotiations . . . .").

[2]      These Gore Factors include: "(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; [and] (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste . . . ."  *TDY Holdings*, 885 F.3d at 1146 n.1 (quoting *Kerr-McGee Chem. Corp.*, 14 F.3d at 326 n.4).

that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C.A. § 9613(f)(1). While the Gore factors are certainly relevant and have been used by other courts, they are "neither an exhaustive nor exclusive list." *Env't Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992). Here, the district court considered the Gore Factors but found the first four to be neutral, taking into consideration the practical effect of the proposed remedial measure—a slurry wall that would encompass the West Landfill and the Wet Scrubber Sludge Pond ("WSSP").

Considering CFAC's contamination of the WSSP, along with the fact that a large portion of the slurry wall would contain the WSSP, the district court did not err in considering the proposed remedial measure alongside the Gore Factors. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1188 (9th Cir. 2000) (illustrating how in certain circumstances where the cost of remedial measures does not equate to the volume of contamination, it would be inappropriate to look to contamination alone). Ideally, the district court would have explained more fully each party's relative contribution to the need for this joint remedial measure. *See Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 305 (7th Cir. 1999). But we cannot say based on the evidence before us that the district court clearly erred in finding that the slurry wall was occasioned by both ARCO's and CFAC's contamination.

**3.** The district court did not err in its economic benefits analysis. Both parties realized hundreds of millions of dollars in profits during their respective operations. Although ARCO earned more profit than CFAC, ARCO expended over $1 billion dollars on the Site—including the facility's construction and upgrades to mitigate environmental contamination—while CFAC spent only $95 million on Site improvements. The district court also considered that CFAC received the facility and everything ARCO put into it for $1.00. Recognizing these other forms of economic benefit and the substantial profits earned by both parties, the district court did not err in concluding that the totality of the economic picture was neutral. *Cf. Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 132 (D.D.C. 2014), *aff'd*, 833 F.3d 225 (D.C. Cir. 2016) ("Although LPC may not have reaped large profits from its contracts with the government, it helped its parent corporation Lockheed Aircraft Corporation establish a foothold in the rocket propulsion field, a position that Lockheed retains to this day.").

**AFFIRMED.**