**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan TORRES–LOPEZ, Defendant–
Appellant.**

**No. 92–50652.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1993.

Decided Jan. 6, 1994.

· Steven F. Hubachek, Cohen, Hubachek & Riggs, San Diego, CA, for defendant-appellant.

Bruce R. Castetter, and L. Jane Hahn, Asst. U.S. Attys., San Diego, CA, for plaintiff-appellee.

Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.

---

* The Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation.

REINHARDT, Circuit Judge:

Juan Torres–Lopez appeals his sentence of 36 months of imprisonment imposed under the United States Sentencing Guidelines (Guidelines) following his conviction by guilty plea for transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). Torres–Lopez contends that the district court erred by departing upward six levels based on circumstances surrounding a high-speed car chase that are already taken into account under Section 3C1.2 of the Guidelines. Such "double counting," Torres–Lopez argues, violates the three-part test set out in *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir. 1991) (en banc) for evaluating a district court's decision to depart from the Guidelines.

We vacate Torres–Lopez's sentence and remand for resentencing. The district court's six level upward departure was based on conduct already adequately taken into account under the Guidelines. Accordingly, the upward departure is impermissible under *Lira–Barraza.* ·

## FACTS AND PRIOR PROCEEDINGS

On May 14, 1992, at approximately 11:30 P.M., Border Patrol agents observed four suspected illegal aliens walking alongside Interstate 805 near San Ysidro, CA. Shortly thereafter, these four individuals were met by Torres–Lopez. Three of them followed Torres–Lopez across Interstate 805, where they all got into a Chevrolet sedan and drove away. The Border Patrol agents followed the car for a short distance to Beyer Boulevard, at which point the Border Patrol agents turned on their red lights and sirens and signaled Torres–Lopez to stop. Torres–Lopez did not stop, however. He continued on to Interstate 905 and traveled eastbound at approximately 80 miles per hour back to Interstate 805, where he drove southbound for a short distance. He then drove the car onto the median strip, and slowed it to a point where its occupants could emerge without injury. Torres–Lopez then jumped out, as did the other illegal aliens, and the car rolled to a stop, striking a tree. None of Torres–Lopez's passengers were injured, although two of the aliens told the probation officer that during the chase they had feared

for their lives and had asked defendant to stop, to no avail. The entire car chase was only a few minutes and less than five miles long.

The three passengers were apprehended after a brief chase. Torres–Lopez was pursued on foot as he crossed the eastbound lanes of Interstate 805 before he too was apprehended. Torres–Lopez denied that he was to receive any money for transporting the aliens, maintaining that he offered them a ride to San Diego strictly as a favor to fellow countrymen.

Torres–Lopez pled guilty on July 6, 1992, to transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). In his sentencing report, the probation officer calculated Torres–Lopez's criminal history category as V. The base offense level was then computed as nine pursuant to U.S.S.G. § 2L1.1(a). The probation officer deducted three levels because the offense was not committed for profit pursuant to Section 2L1.1(b)(1). An upward adjustment of two levels was recommended for reckless endangerment during flight pursuant to Section 3C1.2. This enhancement applied, in the probation officer's view, because Torres–Lopez "initiated a high speed chase that endangered the safety of the motoring public." Finally, two points were deducted for acceptance of responsibility pursuant to Section 3E1.1(a). The total offense level thus calculated was 8. A total offense level of 8 and a criminal history category of V provides for a guideline range of 15–21 months imprisonment. The probation officer then recommended an upward departure of an additional four levels due to the high speed chase.

At the sentencing hearing, the district court accepted the probation officer's reckoning of the 15–21 month guideline range. The district court then imposed a six level upward departure on the basis of reckless endangerment during the high speed chase, which raised the range to 33 to 41 months. The court sentenced Torres–Lopez to the midpoint of this range: 36 months.

The district court provided an extensive rationale for its upward departure. The court noted that upward departure in high

speed chase cases was expressly permitted by *United States v. Hernandez–Rodriguez*, 975 F.2d 622 (9th Cir.1992). The court then argued that its six level upward departure was reasonable, in light of the "very egregious aggravating facts of a kind not, in the Court's position, taken into consideration by the Sentencing Commission...." The court noted that "abandoning the moving car ... amounted to dangerous and inhumane treatment of the aliens." Finally, the court drew analogies to other provisions of the Guidelines. The vehicle used in the chase was analogized to the use of a "weapon or dangerous instrumentality," which typically results in a four level enhancement. Torres–Lopez's reckless driving was analogized to the operation of a common carrier while under the influence of drugs or alcohol, a two level enhancement. The court decided to aggregate the enhancements suggested by these analogies, resulting in a six level upward departure.

### DISCUSSION

■ In *Lira–Barraza*, 941 F.2d at 746–47, this Court articulated a three-part test for evaluating a district court's decision to depart from the Guidelines. First, the district court's determination that an "unusual circumstance" not adequately considered by the Guidelines permits departure is subject to *de novo* review. *Id.* at 746. Second, the district court's factual findings supporting the existence of an identified circumstance permitting departure are reviewed for clear error. *Id.* at 746–47. Finally, the extent of the departure is reviewed to determine whether it is "reasonable" in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines. *Id.* at 747.

■ The primary issue in this case is whether the chase of Torres–Lopez by Border Patrol agents presents "unusual circumstances" not taken into account by the Commission in an extant section of the Guidelines, and thereby merits upward departure. As such, the district court's determination is reviewed *de novo*.

The Guidelines mandate a two level increase to a defendant's base offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. This Court held in *Hernandez–Rodriguez*, 975 F.2d at 626, that this adjustment is appropriate when alien passengers are endangered in the course of their smuggler's flight from law enforcement agents. There is no controversy over the application of Section 3C1.2 in this case: Both parties agree that Torres–Lopez's flight from Border Patrol agents created a "substantial risk of death or serious bodily injury" both to the aliens and the motoring public. The primary question here is whether Torres–Lopez's flight implicates *only* this two level enhancement, or whether it is in some way exceptional, and thus properly calls for an upward departure in addition to a two level enhancement under Section 3C1.2.

Departure from the Guidelines is authorized only in an "atypical case, one to which a particular guideline applies but where conduct significantly differs from the norm." U.S.S.G. Ch. 1, Pt. A, § 4(b). As the Commission has pointed out, "sentencing courts [should] treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *Id.*

The Guidelines explicitly authorize an upward departure for "offenses involving large numbers of aliens or dangerous or inhumane treatment," U.S.S.G. § 2L1.1, comment (n. 8), and we have upheld sentences that include both the two level enhancement mandated in Section 3C1.2 and the departure suggested in Section 2L1.1. These cases, however, do not come within the "heartland" of dangerous flight from authority that is covered by Section 3C1.2. Rather, departure has been authorized only in cases where "the defendant embarks upon a high-speed dangerous flight in a vehicle overloaded with human beings who are being treated like mere cargo." *Hernandez–Rodriguez*, 975 F.2d at 626 (departure authorized where defendant traveled for more than three hours at speeds up to 80 miles per hour with one alien in the passenger seat and four aliens in the cargo compartment of a two-seat sports car). *See also United States v. Cruz–Ventura*, 979 F.2d 146, 147 (9th Cir.1992) (depar-

ture authorized where defendant traveled more than twelve miles at speeds up to 100 miles per hour, using all the travel lanes as well as the median strip and the shoulder with four aliens locked in the trunk of a Buick LeSabre). The aggravating factor central to these cases is the helplessness of illegal aliens held *captive* for lengthy periods of time in a cargo area of a vehicle during an high-speed automobile chase. We note that in each of those cases there were elements other than speed that made the chase unsafe. *Hernandez–Rodriguez* holds explicitly that Application Note 8 to Section 2L1.1, the alien transportation guideline, authorizes departure based upon "the particular danger imposed by the alien transporter upon his *captive* passengers." 975 F.2d at 626 (emphasis added). The *Hernandez–Rodriguez* court declined, moreover, to adopt an interpretation of Application Note 8 that would result in an upward departure in every case in which a high speed flight from law enforcement involves more than one person. *Id.* at 627.

The district court in this case overstepped the limits inherent in *Hernandez–Rodriguez.* While Torres–Lopez's flight from border agents did create "a substantial risk of death or serious bodily injury" to the aliens and the motoring public sufficient to call for a two level enhancement under Section 3C1.2, it is also well within the "heartland" of cases that Section 3C1.2 is meant to cover. Unlike the three-hour chase in *Hernandez–Rodriguez,* for example, Torres–Lopez's flight from border agents was only a few minutes and less than five miles long. And in contrast to the 100 mile per hour chase in *Cruz–Ventura,* where the defendant used all the travel lanes, the median strip and the shoulder, Torres–Lopez's flight was not unusually fast or reckless. Perhaps most important, Torres–Lopez's Chevrolet sedan was not overloaded with captive aliens, and, unlike both *Hernandez–Rodriguez* and *Cruz–Ventura,* all of them occupied the passenger compartment of the vehicle. While the lives of Torres–Lopez's passengers were put in considerable danger, they were not treated as "mere cargo" as that term was used to justify upward departures in *Hernandez–Rodriguez* and *Cruz–Ventura.* Torres–Lopez's abandon-

ment of his car does not change this conclusion. Though the abandonment created some small additional danger to the aliens, such danger remains well within the boundaries of 3C1.2.

The district court's other justifications for its upward departure betray similar weaknesses. The court claimed the authority to depart under U.S.S.G. § 5K2.6 for the use of a vehicle as a "dangerous instrumentality," based in part on Torres–Lopez's abandonment of the car. But a car is not a dangerous instrumentality under § 5K2.6 unless it is used with the intent to cause harm. *See United States v. Sanchez,* 914 F.2d 1355, 1363 (9th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991); *United States v. Aceves–Rosales,* 832 F.2d 1155, 1157 (9th Cir.1987), *cert. denied,* 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). Such intent was plainly absent here. Torres–Lopez's action in leading the aliens across the traffic lanes of Interstate 805 was identified as another basis for departure. But Torres–Lopez was not being pursued at that time—he was therefore free to cross whenever the roadway was free of traffic. There is no evidence that he led the aliens across the highway unsafely, or that heavy traffic—unlikely at 11:30 P.M.—made the crossing inherently unsafe. But even if the crossing was unsafe, such danger is well within the ambit of Section 3C1.2 and should not provide justification for departure in addition to a two level enhancement. Finally, Torres–Lopez's flight on foot across Interstate 805 *after* the automobile chase ended, which was another factor relied upon by the district court, likewise cannot support upward departure. This portion of Torres–Lopez's flight did not threaten the aliens, and any small additional danger posed to the motoring public is of the same type created by the high-speed chase generally, and is likewise within the heartland of Section 3C1.2.

In sum, there is nothing here, aside from the bare presence of illegal aliens, to suggest that Torres–Lopez's flight from authority was in any way extraordinary. Under the district court's reasoning, virtually every flight from authority would permit departure.

This would leave section 3C1.2 with a very small heartland indeed.

Accordingly, the sentence is VACATED, and the case REMANDED FOR RESENTENCING.