**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Frederick BEASLEY,
Defendant–Appellant.**

No. 95–10428.

United States Court of Appeals,
Ninth Circuit.

Submitted July 11, 1996.[*]

Decided July 24, 1996.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34–4.

Francine Zepeda, Assistant Federal Defender, Fresno, California, for defendant-appellant.

Kathleen A. Servatius, Assistant United States Attorney, Fresno, California, for plaintiff-appellee.

Before: O'SCANNLAIN and LEAVY, Circuit Judges; HUFF,** District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a defendant's conduct during the course of two robberies justified an upward departure from the applicable Sentencing Guideline range.

**I**

On April 4, 1995, John Frederick Beasley robbed the U.S. Post Office in Pinedale, California. Upon entering the post office, he passed the clerk a note that read: "I have a gun in my pocket, give me all your money or I will shoot." He then instructed the clerk to fill a manila envelope with money. After the clerk complied, Beasley took the envelope and fled the scene in an awaiting getaway car. Six days later, on April 10, 1995, Beasley robbed a Bank of America branch office in Fresno, California using the same technique.

** The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation.

Shortly after the bank robbery, a Fresno police officer identified a vehicle matching the description of Beasley's getaway car. Upon seeing the vehicle roll through a red light, the officer gave chase, activating his lights and siren. What followed was a high-speed pursuit covering several miles reaching speeds of one hundred miles per hour. In the course of Beasley's flight from authorities, he ran at least two red lights, caused a civilian vehicle to broadside his car (spinning his vehicle 180 degrees), fled the scene of the collision, was rammed by the pursuing officer's patrol car (which disabled the officer's car), and continued to flee until finally stopped by two other patrol cars. Found in the vehicle with Beasley when he was finally apprehended were his wife and their four-year-old son who had been abducted from his legal guardians.

On April 20, 1995, Beasley was charged in a superseding indictment with bank robbery and robbery of United States money. On June 5, 1995, pursuant to an agreement with the government, Beasley entered guilty pleas to both counts. In exchange, the government agreed to recommend that Beasley receive a three-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). The government further agreed not to seek an upward departure or file an information charging prior convictions pursuant to 18 U.S.C. § 3559.

On June 30, 1995, while awaiting sentencing, Beasley attempted to escape from custody. After arriving at Valley Medical Center for a medical appointment, he attacked a correctional officer, gaining a grip on her firearm. Before Beasley could wrest the gun from its holster, the officer, assisted by a passing doctor, was able to break Beasley's grip on the weapon and subdue him.

Beasley first appeared for sentencing on September 5, 1995.[1] The Presentence Report's calculation of his offense level and his criminal history category corresponded to a sentencing range of 100 to 125 months. The probation officer who prepared the report recommended 125 months, the high end of that range. During the sentencing hearing of September 5, 1995, the district court first announced its intention to depart upward. Counsel for Beasley requested additional time in which to prepare a memorandum of law on the issue of upward departure. Sentencing was rescheduled for September 18, 1995.

On September 18, 1995, Beasley was sentenced to a prison term of 188 months. The trial court departed upward from the Guideline range of 100–125 months to the 151–188 month range by raising Beasley's offense level from 25 to 29 and his criminal history category from V to VI. The offense level was raised two points based on Beasley's extreme recklessness during flight and two points based on his extreme obstruction of justice behavior. Beasley's criminal history category was raised one level on the ground a criminal history category of V under-represented his criminality.

On September 26, 1995, Beasley filed a timely notice of appeal from his sentence under 18 U.S.C. § 3742.

## II

Until recently, this court reviewed departures from the Sentencing Guidelines under the three-part test of *United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir.1991). Under *Lira–Barraza*, we would first review de novo whether the trial court had legal authority to depart under 18 U.S.C. § 3553(b), which requires the presence of an aggravating circumstance of kind or degree not adequately considered by the Commission in formulating the Guidelines. *Id.* at 746. Next, we would review for clear error the factual findings upon which the existence of the identified circumstance was based. *Id.* Finally, we would review the extent of the departure from the applicable Guideline range for reasonableness under 18 U.S.C. § 3742(e)(3). *Id.* at 747.

■ The standard of review for departures from the Sentencing Guidelines is now controlled by the Supreme Court's recent decision in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In *Koon*, the Court held that appellate courts

1. Beasley was sentenced under the 1994 Sentencing Guidelines.

should not review departure decisions de novo, but should instead employ a unitary abuse of discretion standard. *Id.* at ——— ———, 116 S.Ct. at 2047–48. While not expressly mentioning *Lira–Barraza*, the Court explained that the mere fact that some departure decisions raise questions of law "does not mean, as a consequence, that parts of the review must be labeled de novo while other parts are labeled an abuse of discretion." *Id.* at ———, 116 S.Ct. at 2047. We therefore conclude that *Lira–Barraza* has been effectively overruled. The only relevant inquiry in reviewing Sentencing Guideline departure cases is whether the trial court abused its discretion in imposing the sentence.

### III

■■■ Beasley first argues that the district court erred in raising his criminal history category from V to VI based on prior convictions too remote under U.S.S.G. § 4A1.2(e)(3) to be considered in calculating his criminal history score. The Guidelines expressly state that remote prior convictions providing evidence of similar, or serious dissimilar, criminal conduct may be relevant when considering the adequacy of the defendant's criminal history category under U.S.S.G. § 4A1.3. U.S.S.G. § 4A1.2, Application Note 8. Thus, the trial court did not err in considering Beasley's six remote prior convictions in evaluating the adequacy of his criminal history category.

■■ Beasley is correct in asserting that an upward departure based on the inadequacy of a defendant's criminal history under U.S.S.G. § 4A1.3 is warranted only where the assigned category significantly underrepresents the seriousness of the defendant's past crimes and the likelihood of recidivism. *See United States v. Durham,* 941 F.2d 858, 863 (9th Cir.1991); *United States v. Singleton,* 917 F.2d 411, 412 (9th Cir.1990) (citing *United States v. Gayou,* 901 F.2d 746, 748 (9th Cir.1990)). However, he fails to demonstrate that a criminal history category of V did not, in fact, seriously under-represent the seriousness of his criminal record and his propensity to commit crimes. Because his remote prior convictions were for serious offenses including first degree robbery, assault with force, and voluntary manslaughter, the trial court did not abuse its discretion in concluding that Beasley's assigned criminal history category was inadequate.

### IV

■■ Beasley next argues that the trial court lacked legal authority to depart upward two levels based on the extreme nature of his flight from authorities. He maintains that his conduct was within the "heartland" of U.S.S.G. § 3C1.2 because the provision necessarily contemplates fleeing from authorities at high rates of speed with others in the car. In support of this contention, he cites *United States v. Torres–Lopez,* 13 F.3d 1308 (9th Cir.1994) (holding that the defendant's conduct during a high speed chase that endangered the lives of three illegal alien passengers was within the heartland of section 3C1.2), and *United States v. Hernandez–Rodriguez,* 975 F.2d 622 (9th Cir.1992) (holding that to remove a case from the "heartland" of section 3C1.2 the defendant's conduct has to be "more than reckless").

The present case is distinguishable from *Hernandez–Rodriguez* and *Torres–Lopez* because section 3C1.2 was amended in November 1992, and the defendants in *Hernandez–Rodriguez* and *Torres–Lopez* were sentenced according to the pre-amendment 1992 Guidelines. The 1992 amendment added an application note to section 3C1.2 which specifically allows for an upward departure under section 5K2.0 where the defendant's conduct "posed a substantial risk of death or bodily injury to more than one person." U.S.S.G.App. C, Amendment 457; U.S.S.G. § 3C1.2, Application Note 6 (1994). As Beasley's conduct posed exactly such a risk, the trial court did not abuse its discretion in deciding to depart upward.

Furthermore, the presence of Beasley's four-year-old child in the back seat was an aggravating circumstance not found in either *Hernandez–Rodriguez* or *Torres–Lopez.* The defendants in those cases were smuggling illegal aliens into the country in violation of 8 U.S.C. § 1324(a)(1)(B). *Torres–Lopez,* 13 F.3d at 1310; *Hernandez–Rodri-*

*guez,* 975 F.2d at 624. While the presence of other passengers in the vehicle of a defendant engaged in smuggling aliens is necessarily contemplated by the Guidelines, the presence of a four-year-old child in the back seat of a bank robber's getaway car is not.

## V

■ Finally, Beasley argues that the district court lacked the authority to depart upward two levels based on his conduct in attempting to escape from custody because such behavior was within the "heartland" of U.S.S.G. § 3C1.1. This argument fails because the use of violence—in this case, attacking a female correctional officer and attempting to steal her gun—is not contemplated by section 3C1.1, which defines the applicable conduct merely as "escaping or attempting to escape from custody before trial or sentencing." U.S.S.G. § 3C1.1, Application Note 3(e). The Guidelines expressly provide for departure in extreme cases, U.S.S.G. § 5K2.0, and the trial court did not abuse its discretion in concluding that Beasley's conduct in attempting to escape was extreme.

## VI

For the foregoing reasons, the defendant's sentence is AFFIRMED.