UNITED STATES of America,
Plaintiff–Appellee,

v.

Gonzalo REYES–OSEGUERA,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

David KIRSCH, Defendant–Appellant.

Nos. 96–50076, 96–50079.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Feb. 18, 1997.

Stephen E. Webber, Los Angeles, California, for defendant-appellant Gonzalo Reyes–Oseguera.

Michael V. White, White & Lasting, Santa Monica, California, for defendant-appellant David Kirsch.

Lawrence Ng, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: BRUNETTI, TROTT, and THOMAS, Circuit Judges.

TROTT, Circuit Judge:

Gonzalo Reyes–Oseguera and David Kirsch, codefendants, appeal the district court's application of a two-level sentence enhancement for reckless endangerment during flight, pursuant to USSG § 3C1.2. The court imposed the enhancement in Kirsch's case because he fled across a thoroughfare in medium to heavy traffic, and in Reyes–Oseguera's case because he fled from an armed officer, forcing the officer to wrestle with him to apprehend him. We must decide whether the circumstances surrounding each defendant's respective flight warrant the enhancement for reckless endangerment.

Because the district court's findings regarding Kirsch—that by running through busy traffic he created a substantial risk to motorists—are plausible, we affirm Kirsch's sentence. However, because the record is too incomplete to support the district court's findings that an armed law enforcement agent was forced to tackle Reyes–Oseguera to subdue him, we hold that the district court clearly erred in applying the enhancement to Reyes–Oseguera's sentence. Thus, we vacate the sentence and remand to the district court with instructions to resentence Reyes–Oseguera in accordance with its alternative sentence.

## BACKGROUND

On August 17, 1995, at approximately 8:00 p.m., Kirsch was driving a step-van in the right, southbound lane of a four-lane boulevard. Reyes–Oseguera was a passenger in the van, and twenty-seven undocumented aliens were in the back. Approximately six Immigration and Naturalization Service (INS) vehicles followed the van and ultimately "red-lighted" it. Kirsch quickly stopped the van, and both appellants fled the van on foot.

Reyes–Oseguera exited the right front door and ran southbound on the street or sidewalk. An agent pursued and apprehended him. Kirsch exited the left front door, ran diagonally across one southbound and two northbound lanes of traffic, and proceeded northbound on the sidewalk. INS agents pursued him across the street and apprehended him after he had run approximately four to six car lengths.

Reyes–Oseguera pled guilty to conspiracy, in violation of 18 U.S.C. § 371, and concealing and harboring illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Kirsch pled guilty to conspiracy, in violation of 18 U.S.C. § 371, and transporting illegal aliens, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii). At sentencing, the district court found that each defendant's conduct created a substantial risk of serious bodily injury or death. Kirsch, by running through busy traffic, created a risk to motorists. Reyes–Oseguera, by inducing an armed law enforcement officer to pursue and subdue him, created a risk to the officer. Therefore the court imposed a two-level enhancement for reckless endangerment during flight pursuant to section 3C1.2. The court sentenced Kirsch to twenty-seven months, with an alternate sentence of twenty-one months calculated without the enhancement, and Reyes–Oseguera to thirty months, with an alternate sentence of twenty-four months calculated without the enhancement.

## STANDARD OF REVIEW

We review the district court's findings of fact underlying a sentencing decision for clear error. *United States v. Robinson,*

94 F.3d 1325, 1327 (9th Cir.1996); *United States v. Young*, 33 F.3d 31, 32 (9th Cir. 1994). We review the district court's application of the Sentencing Guidelines to the facts for an abuse of discretion. *Robinson*, 94 F.3d at 1327.

## DISCUSSION

### I. Instinctive Flight v. Reckless Endangerment

In this case, we must define the scope of section 3C1.2 and determine what conduct is sufficient to warrant its application. Section 3C1.2 states:

> If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

The guidelines define "reckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted gross deviation from the standard of care that a reasonable person would exercise in such a situation." USSG § 2A1.4, comment. (n.1). We have had little opportunity to determine when a foot flight can rise to the level of reckless endangerment.

In *United States v. Garcia*, 909 F.2d 389, 390–91 (9th Cir.1990), the defendant fled on foot after a traffic stop. Police pursued him into a nearby field, where he surrendered. The district court enhanced the defendant's sentence based on section 3C1.1, obstruction of justice, which was applied in flight cases prior to the 1990 addition of section 3C1.2. We reversed, explaining that obstruction of justice required "something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police. 'Mere flight in the immediate aftermath of a crime' does not justify the enhancement." *Id.* at 392 (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990)).

■ Appellants ask us to hold that section 3C1.2 does not apply to foot flight, pointing out that the majority of our caselaw applying section 3C1.2 involved vehicle pursuits, often at high-speeds. While we recognize that courts typically apply section 3C1.2 enhancements in the context of high-speed or dangerous vehicle pursuits, we have not precluded application of section 3C1.2 to other situations, including foot flight. *See, e.g., United States v. Torres–Lopez*, 13 F.3d 1308, 1312 (9th Cir.1994) (finding that additional danger to the motoring public posed by defendant's foot flight is of the same type created by their high-speed chase and is "within the 'heartland'" of section 3C1.2); *Young*, 33 F.3d at 33 (Wiggins, J., concurring) (emphasizing that reckless endangerment could include not only driving recklessly, but also seeking to escape on foot). Thus, we decline appellants' request, but reiterate the rule that instinctive flight on foot from law enforcement is insufficient on its own to justify the application of section 3C1.2. The guidelines contemplate that some additional conduct must create a substantial risk.

Having determined that, without more, instinctive flight does not constitute reckless endangerment, we must consider whether the defendants' conduct constituted "mere flight," or included additional behavior that recklessly created a substantial risk of death or serious bodily injury.

### II. Kirsch

■ After being red-lighted by the INS, Kirsch stopped the van and fled on foot across three lanes of traffic on a busy thoroughfare. The district court held that Kirsch recklessly created a substantial risk to motorists (but not to the pursuing officers) after finding that: (1) it was nighttime; (2) the speed limit on the roadway was 35 or 40 mph; (3) there was medium to heavy traffic; and (4) Kirsch took off into traffic, diagonally moving from south to north across several lanes of traffic. Kirsch's conduct was not simply instinctive flight, but contained an additional element that brings it within section 3C1.2.

By fleeing across several lanes of busy traffic, Kirsch recklessly created a substantial risk to the motoring public. Motorists in the area, surprised by the commotion, could have swerved and braked to avoid the fleeing Kirsch, resulting in a substantial risk of colli-

sions and injury. The district court's finding that running in traffic under these circumstances recklessly created a substantial risk is certainly plausible and does not leave this court with a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993).

We therefore affirm the district court's imposition of a two-level enhancement for reckless endangerment during flight in sentencing Kirsch.

### III. Reyes–Oseguera

■ The factual record is not so clear as to Reyes–Oseguera. Reyes–Oseguera fled on foot on either the far edge of the roadway or the sidewalk and was pursued by an armed agent. However, the record fails to describe adequately how Reyes–Oseguera ultimately was apprehended.

The district court ruled that Reyes–Oseguera recklessly created a substantial risk to the pursuing officer after finding that: (1) Reyes–Oseguera fled law enforcement officers on foot; and (2) an armed law enforcement officer pursued, tackled, and subdued Reyes–Oseguera. The court based this second finding on the testimony of INS Special Agent Anna Morones. Agent Morones testified she was not present during the apprehension but the agent who stopped Reyes–Oseguera later told her that "he had to basically tackle Mr. Oseguera to arrest him" and that "he had to run and jump on top of the guy to stop him." Reyes–Oseguera disputes the finding that he resisted the agent or forced the agent to wrestle him to the ground. He argues there is no evidence that, once overtaken, he failed to cooperate. Agent Morones concedes that she was not present during the apprehension, that the apprehending agent did not go into detail when relaying what had happened, and that she did not even know whether the defendant laid still "as if he were comatose" once he was stopped.

We believe that the record is insufficient to support a finding of reckless endangerment. Reyes–Oseguera's instinctive flight alone will not support the enhancement, nor will the armed agent's pursuit. Most flight will draw pursuit, and most law enforcement officers are armed. To hold that a defendant recklessly endangers another solely because he is pursued by an armed agent is the functional equivalent of finding instinctive flight sufficient. We are also wary of attributing an awareness of the actions of law enforcement officials to suspects who are in the midst of instinctive—and therefore not reasoned or contemplative—flight.

The government argues that a defendant who must be subdued creates the necessary risk. However, such a broad standard easily degenerates into flight alone, because all fleeing suspects who do not voluntarily surrender "must be subdued." The issue is whether the suspect's behavior during the apprehension recklessly endangers the officer. Therefore Reyes–Oseguera's behavior at the time of apprehension is critical. While it is possible that he resisted the agent and a struggle ensued, it is equally possible that Reyes–Oseguera simply fell to the ground in surrender and exhaustion. Without the testimony of the apprehending agent, it is not possible to make a conclusive determination.

We hold that the district court clearly erred in applying the enhancement based solely upon Agent Morones's hearsay testimony of questionable reliability, in which she admits she was not present and does not know what really happened. We therefore vacate the thirty month sentence and remand to the district court with instructions to re-sentence Reyes–Oseguera in accordance with its alternative sentence of twenty-four months, as stated in its Criminal Minutes—Sentencing and Judgment, entered on February 5, 1996.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

THOMAS, Circuit Judge, concurring in part and dissenting in part.

I concur with all of Judge Trott's thoughtful opinion save the disposition of Defendant Kirsch's appeal contained in section II. In this case, the district court sua sponte raised

the question of sentence enhancement beyond that recommended in the pre-sentence report or by the government. The undisputed evidence reveals that Defendant Kirsch, a polio victim, hobbled six car lengths before being apprehended. Aside from the mere fact that traffic stopped, there is no evidence that motorists were put at any risk, and certainly not the "substantial risk of death or serious bodily injury" required by U.S.S.G. § 3C1.2. Indeed, the scant record conflicts as to whether traffic halted in reaction to the red lights and sirens or because Kirsch crossed traffic lanes.

These facts stand in contrast to the previous application of section 3C1.2 to barricaded standoffs and high speed chases. *See United States v. Campbell,* 42 F.3d 1199 (9th Cir. 1994) (twelve hour police standoff involving seventy law enforcement officers and violent threats); *United States v. Giacometti,* 28 F.3d 698 (7th Cir.1994) (100 m.p.h. case through a residential neighborhood forcing thirty cars off the road).

A more complete development of the record might well sustain a section 3C1.2 enhancement under the rule enunciated in this decision. However, in my opinion, the truncated hearing in this case does not. I would either remand Defendant Kirsch's appeal for further development of the record or imposition of the alternative sentence set by the district court in event of an adverse result on appeal.