> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 26, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-1984

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17 CR 50-1 |
| DEANDRE ATWOOD, <br> *Defendant-Appellant*. | Virginia M. Kendall, <br> *Judge*. |

**O R D E R**

In the wee hours of the morning of November 20, 2016, an intoxicated Deandre Atwood was creeping along Chicago's Dan Ryan Expressway at a rate of 5 to 10 miles per hour in a stolen Mercedes with a flat tire. Observing this unusual behavior, a state trooper pulled him over. Atwood pulled off onto the Roosevelt Road exit ramp. He then stepped out of the car holding a handgun with a 50-round "drum" magazine, hurled the weapon over a fence, and then fled across eight lanes of the expressway. Troopers were close behind. After using a Taser and pepper spray, they subdued and arrested him. Atwood, who had an earlier felony on his record, ultimately was charged with and

pleaded guilty to unlawfully possessing a gun. See 18 U.S.C. § 922(g)(1). Over his objection, the district court applied a sentencing enhancement for reckless endangerment while fleeing, U.S.S.G. § 3C1.2. Because his acts of tossing the gun and dashing across a major expressway put others at serious risk of harm, we affirm the sentence.

**I**

Atwood's written plea agreement, together with the uncontested facts from the presentence investigation report ("PSR"), tell the story of his crime and capture. At two o'clock in the morning, Illinois State Police troopers pulled Atwood over as he slowly yet erratically drove with two passengers on Interstate 90/94, known in Chicago as the Dan Ryan Expressway. Intoxicated on a mixture of Ecstasy, prescription drugs, and alcohol, Atwood pulled off onto an exit ramp and emerged from the car holding a loaded handgun with a 50-round drum magazine, which made the gun look to one trooper like a "dumbbell." (Atwood's brief says there was no "indication" that the gun was loaded, but the plea agreement says otherwise.)

Upon recognizing the gun, one trooper unholstered his service weapon, but Atwood promptly tossed his own gun over a fence between the expressway and the exit ramp and then raced across eight lanes of traffic; he was arrested on the other side. The PSR characterizes Atwood as having "dodged other cars as he ran."

Because he had at least two prior felony convictions, Atwood pleaded guilty to unlawfully possessing a firearm. See 18 U.S.C. § 922(g)(1). At sentencing, the government sought a two-level enhancement under U.S.S.G. § 3C1.2 for recklessly creating a substantial risk of death or serious injury to another person while fleeing from an officer. Atwood resisted the enhancement, stressing that traffic on the expressway is light at two o'clock in the morning and that no accident actually occurred. He also urged that, whatever one might make of his handling of the gun and the foot-chase across the expressway, his intoxicated driving should play no role in applying the enhancement because he did not flee until after he was pulled over.

The district court agreed with the government and applied the enhancement. The court reasoned that Atwood recklessly endangered others in three ways: his impaired driving, the gun-throwing, and his bolt across the expressway. It noted that Atwood could have caused a crash both while driving *and* while running across the expressway. The court sentenced Atwood to 84 months in prison, the low end of the advisory Guidelines range of 84 to 105 months for someone with an offense level of 23 and Criminal History V.

## II

Atwood argues that the district court erred in applying the two-level enhancement, because the circumstances of his flight did not warrant a finding of reckless endangerment. He contends specifically that the court improperly considered his impaired driving when calculating the risk he created. But Atwood's dash across the expressway and handling of the gun more than justify the enhancement on their own.

A defendant's offense level rises by two if he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Generally, we review a district court's findings of fact for clear error and its application of the Guidelines to those facts *de novo*. See, *e.g.*, *United States v. Seals*, 813 F.3d 1038, 1044 (7th Cir. 2016). Although Atwood argues that we should review the district court's entire decision *de novo*, the degree of risk posed by particular conduct and a defendant's mental state are questions of fact, see *Dockery v. Blackburn*, 911 F.3d 458, 465 (7th Cir. 2018); *United States v. Morris*, 576 F.3d 661, 674 (7th Cir. 2009), and so those parts of the district court's decision receive clear-error review, *Seals*, 813 F.3d at 1044.

Here, the risks are obvious. After stopping the car, Atwood emerged with a loaded gun (equipped with an extended magazine) in his hand, prompting a trooper to draw his own firearm. Atwood then ran across eight lanes of an expressway. Either of these acts alone could have caused serious bodily injury to others: the trooper might have opened fire on Atwood and hit a third party, and drivers might have swerved to avoid Atwood and hit barriers, other cars, or a pursuing trooper. No one was injured here, but actual injury is not required; § 3C1.2 considers the degree of risk that Atwood disregarded. *United States v. Thomas*, 294 F.3d 899, 907 (7th Cir. 2002); *cf.* U.S.S.G. § 3C1.2 cmt. n.6 (actual injury may warrant upward departure from enhanced range).

Indeed, we already have recognized that revealing a gun during flight is reckless endangerment that warrants the enhancement. *United States v. Easter*, 553 F.3d 519, 523–24 (7th Cir. 2009) (regardless of suspect's actual intent, "simply reaching" for gun during flight "is enough" to create substantial risk of serious bodily injury to others). Notably, the Guidelines commentary advises us to construe the concept of "during flight" broadly to encompass preparation for flight. U.S.S.G. § 3C1.2 cmt. n.3. Here, Atwood's preparation for flight included emerging from the car with both his gun and its 50-round magazine on display. Merely possessing the gun and magazine unlawfully, for which Atwood was convicted and which § 2K2.1 addresses, is one thing; preparing to flee with a visible weapon is another. Section 3C1.2 covers the latter conduct.

Moreover, although merely fleeing on foot through an open space might not create the requisite substantial risk of injury, see *United States v. Lard*, 327 F.3d 551, 553 (7th Cir. 2003), Atwood ran *across the expressway*. Traffic during the wee hours of the morning might be thin, but the path across eight lanes of expressway is long when the sky is dark, and any passing cars are likely to zip by at high speeds. For similar reasons, the Ninth Circuit has held that running on foot across multiple lanes of traffic justifies the enhancement. See *United States v. Reyes-Oseguera*, 106 F.3d 1481, 1483–84 (9th Cir. 1997). We find that reasoning persuasive here.

Atwood has not cited any majority decision that contradicts *Reyes-Oseguera*, and we are aware of none. He instead relies on the dissenting opinion in that case, which reveals that the fleeing defendant there was a polio survivor who merely "hobbled six car lengths" into stopped traffic, *Reyes-Oseguera*, 106 F.3d at 1485 (Thomas, J., concurring in part and dissenting in part). Atwood argues that his flight, like that of the polio survivor, did not create a risk. But the facts here are materially different, and there is no seriously disputing that dodging cars while running across an expressway in the dark is risky and reckless, both because a pursuing trooper could be hit by a car and because other drivers—trying to avoid Atwood or a trooper—would be at risk of a wreck. *Cf. id.* at 1484 (in contrast, flight along sidewalk or edge of boulevard would not support finding of reckless endangerment).

Finally, Atwood contends that the district court's emphasis on his impaired driving was improper because, he says, this driving occurred before the troopers signaled him to curb his vehicle and thus did not take place "during flight." This argument conflicts with the PSR, which states that Atwood "did not initially stop" and that he drove the vehicle for some time after the trooper engaged his lights. But more importantly, even if the district court should not have considered Atwood's driving, the over-inclusion was harmless. In isolation, Atwood's dash across the expressway qualifies him for the enhancement; add his handling of the gun at the start of the chase, and the justification for the enhancement is ironclad. See *Easter*, 553 F.3d at 524 (district court's consideration of risks outside Guidelines definition was harmless when other conduct justified enhancement).

Accordingly, we affirm the sentence.